Samuel R. Randall (No. 024517)
**RANDALL LAW PLLC**
4742 North 24th Street, Suite 300
Phoenix, Arizona 85016
Telephone:    602.328.0262
Facsimile:    602.926.1479
Email:    srandall@randallslaw.com

Richard J. (Rex) Burch*
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Telephone:    713.877.8788
Facsimile:    713-877-8065
Email:    rburch@brucknerburch.com

Michael A. Josephson*
Andrew W. Dunlap*
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Telephone:    713.352.1100
Facsimile:    713.352.3300
Emails:    mjosephson@mybackwages.com
    adunlap@mybackwages.com

William C. (Clif) Alexander*
Austin W. Anderson*
**ANDERSON ALEXANDER PLLC**
101 N. Shoreline Blvd., Suite 610
Corpus Christi, Texas 78401
Telephone:    361-452-1279
Facsimile:    361-452-1284
Emails:    clif@a2xlaw.com
    austin@a2xlaw.com

*Pro hac vice applications forthcoming

**ATTORNEYS FOR PLAINTIFF AND THE PUTATIVE CLASS MEMBERS**

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Thomas MacKinney, Individually and for Others Similarly Situated,<br><br>  Plaintiff,<br><br> v.<br><br>Vanguard Health Management, Inc. d/b/a Abrazo Health, a Delaware for-profit corporation,<br><br>  Defendant. | Case No. _____<br><br>**ORIGINAL COLLECTIVE ACTION COMPLAINT FOR DAMAGES**<br><br>**Failure to Pay Overtime Wages (Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*)**<br><br>**(Jury Trial Demanded)** |

# ORIGINAL COLLECTIVE ACTION COMPLAINT

## SUMMARY

1.      Thomas MacKinney ("MacKinney") brings this collective action to recover unpaid overtime wages and other damages from Vanguard Health Management, Inc. d/b/a Abrazo Health ("Abrazo").

2.      MacKinney worked for Abrazo as an ER Tech.

3.      Like the Putative Class Members (as defined below), MacKinney regularly worked more than 40 hours a week.

4.      But Abrazo did not pay them for all their hours worked.

5.      Instead, Abrazo automatically deducted 30 minutes a day from these employees' recorded work time for so-called "meal breaks."

6.      MacKinney and the Putative Class Members were thus not paid for that time.

7.      But MacKinney and the Putative Class Members did not actually receive *bona fide* meal breaks.

8.      Instead, Abrazo required MacKinney and the Putative Class Members to remain on-duty and perform compensable work throughout their shifts, and Abrazo continuously subjected them to work interruptions during their unpaid "meal breaks."

9.      Abrazo's auto-deduction policy violates the Fair Labor Standards Act ("FLSA") by depriving MacKinney and the Putative Class Members of overtime wages for all overtime hours worked.

**JURISDICTION & VENUE**

10.    This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

11.    This Court has specific personal jurisdiction over Abrazo with respect to this action because Abrazo conducts substantial business operations in Arizona, including employing MacKinney and the Putative Class Members in Arizona.

12.    Venue is proper because a substantial portion of the events or omissions giving rise to this action occurred in this District and Division. 28 U.S.C. § 1391(b)(2).

13.    Specifically, Abrazo employed MacKinney in Phoenix, Arizona, which is in this District and Division.

**PARTIES**

14.    MacKinney worked for Abrazo as an ER Tech at Abrazo's Central Campus Hospital in Phoenix, Arizona from approximately October 2022 until May 2023.

15.    Throughout his employment, Abrazo classified MacKinney as non-exempt and paid him on an hourly basis.

16.    Throughout his employment, Abrazo subjected MacKinney to its common practice of automatically deducting 30 minutes a day from his recorded work time for so-called "meal breaks."

17.    But throughout his employment, MacKinney did not actually receive *bona fide* meal breaks.

18. MacKinney brings this collective action on behalf of himself and other similarly situated hourly, non-exempt Abrazo patient care employees who were subject to Abrazo's automatic meal break deduction policy.

19. Abrazo automatically deducts 30 minutes a day from these employees' recorded work time for so-called "meal breaks."

20. But these employees do not actually receive *bona fide* meal breaks.

21. Thus, Abrazo uniformly deprives these employees of overtime wages for all hours worked after 40 in a workweek in violation of the FLSA.

22. The putative collective of similarly situated employees is defined as:

> **All hourly, non-exempt employees who worked for, or on behalf of, Abrazo at any Abrazo facility[1] who received a meal period deduction at any time during the past 3 years ("Putative Class Members").**

23. Abrazo is a Delaware for-profit corporation that maintains its corporate headquarters in Dallas, Texas.

24. Abrazo is registered to do business in the State of Arizona.

25. Abrazo may be served with process through its registered agent: CT Corporation System, 3800 North Central Avenue, Suite 460, Phoenix, Arizona 85012.

### COVERAGE UNDER THE FLSA

26. At all relevant times, Abrazo was an "employer" within the meaning of Section 3(d) of the FLSA. 29 U.S.C. § 203(d).

---

[1] *See* https://www.abrazohealth.com/locations (identifying all Abrazo healthcare facilities) (last visited September 29, 2023).

27.     At all relevant times, Abrazo was an "enterprise" within the meaning of Section 3(r) of the FLSA. 29 U.S.C. § 203(r).

28.     At all relevant times, Abrazo was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because Abrazo, had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on good or materials—such as cellphones, computers, medical tools, and personal protective equipment—that have been moved in or produced for commerce.

29.     At all relevant times, Abrazo has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

30.     At all relevant times, MacKinney and the Putative Class Members were Abrazo's "employees" within the meaning of Section 3(e) of the FLSA. 29 U.S.C. § 203(e).

31.     At all relevant times, MacKinney and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

32.     Abrazo uniformly deducted 30 minutes a day from MacKinney's and the Putative Class Members' recorded work time for meal breaks, even when these employees did not actually receive *bona fide*, non-interrupted meal breaks.

33.     As a result, Abrazo failed to pay MacKinney and the Putative Class Members wages (including overtime) for the compensable work they performed during their unpaid "meal breaks."

34.    Abrazo's meal break deduction policy, therefore, violates the FLSA by depriving MacKinney and the Putative Class Members of overtime wages for all hours worked after 40 in a workweek. 29 U.S.C. § 207(a) & (e).

## FACTS

35.    Abrazo operates "a wide-range of acute-care hospitals … serving the greater Phoenix area[,] … including Abrazo Arizona Heart Hospital[,] Abrazo Arrowhead Campus[,] Abrazo Central Campus[,] Abrazo Scottsdale Campus[,] Abrazo Surprise Hospital[,] Abrazo West Campus[, and] Abrazo Cave Creek Hospital[.]"[2]

36.    To meet its business objectives, Abrazo hires patient care workers, including MacKinney and the Putative Class Members, to work in its various hospitals.

37.    Abrazo uniformly classifies these patient care employees (including MacKinney and the Putative Class Members) as non-exempt and pays them on an hourly basis.

38.    While exact job titles and precise job duties may differ, these patient care employees are subjected to the same or similar illegal pay practices for similar work.

39.    For example, MacKinney worked for Abrazo as an ER Tech at Abrazo's Central Campus Hospital in Phoenix, Arizona from approximately October 2022 until May 2023.

40.    As an ER Tech, MacKinney's primary responsibilities included providing direct patient care to the patients at Abrazo's Central Campus Hospital, such as checking vitals, drawing blood, performing electrocardiograms ("EKGs"), charting patients' histories

---

[2] https://www.abrazohealth.com/about (last visited September 29, 2023).

and treatments, responding to emergencies, and generally assisting doctors and other patient care staff.

41.     Throughout his employment, Abrazo classified MacKinney as non-exempt and paid him on an hourly basis.

42.     Throughout his employment, Abrazo subjected MacKinney to its common practice of automatically deducting 30 minutes a day from his recorded work time for so-called "meal breaks."

43.     But throughout his employment, MacKinney did not actually receive *bona fide* meal breaks.

44.     MacKinney and the Putative Class Members perform their jobs under Abrazo's supervision and use materials, equipment, and technology Abrazo approves and supplies.

45.     Abrazo requires MacKinney and the Putative Class Members to follow and abide by common work, time, pay, meal break, and overtime policies and procedures in the performance of their patient care jobs.

46.     At the end of each pay period, MacKinney and the Putative Class Members receive wages from Abrazo that are determined by common systems and methods that Abrazo selects and controls.

47.     Abrazo requires MacKinney and the Putative Class Members to record their hours worked using Abrazo's timeclock system.

48.     Further, Abrazo subjects MacKinney and the Putative Class Members to a common policy and practice of automatically deducting time from their recorded hours worked for meal periods.

49.     Specifically, Abrazo automatically deducts 30 minutes a day from MacKinney's and the Putative Class Members' recorded work time and wages for so-called "meal breaks."

50.     Abrazo automatically deducts this time regardless of whether MacKinney and the Putative Class Members actually received full, uninterrupted, 30-minute meal breaks.

51.     Abrazo simply assumes MacKinney and the Putative Class Members receive *bona fide* meal breaks each shift they work.

52.     But MacKinney and the Putative Class Members do not actually receive *bona fide* meal breaks.

53.     Instead, Abrazo requires MacKinney and the Putative Class Members to remain on-duty and perform compensable work throughout their shifts.

54.     And Abrazo continuously subjects MacKinney and the Putative Class Members to work interruptions during their unpaid meal periods.

55.     In fact, even when MacKinney and the Putative Class Members attempt to take a meal break, Abrazo requires them to stay at their assigned hospital and carry electronic devices (e.g., ASCOM phones) on their person so Abrazo can contact them at any time (including during their unpaid "meal breaks").

56.     Because of these constant work interruptions, MacKinney and the Putative Class Members are not free to engage in personal activities during their unpaid meal periods.

57.     Rather, during their unpaid "meal breaks," MacKinney and the Putative Class Members are necessarily forced to substantially perform their regular patient care job duties and responsibilities.

58. Thus, MacKinney and the Putative Class Members routinely spend their unpaid "meal breaks" performing work for Abrazo's—not these employees'—predominant benefit.

59. This unpaid time is compensable under the FLSA because Abrazo knew, or should have known, that (1) MacKinney and the Putative Class Members were performing unpaid work during their "meal breaks," (2) they were interrupted or subject to interruptions with work duties during any attempted meal period, (3) they were not completely relieved of all duties during their "meal breaks," (4) they entirely skipped the meal period due to work demands, (5) the meal period was less than 20 consecutive minutes, (6) they were not free to engage in personal activities during their meal periods because of constant work interruptions, (7) they remained on Abrazo's premises or under Abrazo's supervision, and/or (8) they spent their unpaid meal periods substantially performing their regular patient care duties for Abrazo's predominant benefit.

60. Abrazo fails to exercise its duty as MacKinney's and the Putative Class Members' employer to ensure these employees are not performing work that Abrazo does not want performed during their unpaid "meal breaks."

61. And Abrazo knows MacKinney and the Putative Class Members routinely perform work "off the clock" during their unpaid meal breaks because Abrazo expects and requires these employees to do so.

62. In fact, MacKinney and the Putative Class Members repeatedly complained to Abrazo's management and their supervisors about being forced to work during their unpaid "meal breaks."

63.     Thus, Abrazo requested, suffered, permitted, or allowed MacKinney and the Putative Class Members to work during their unpaid "meal breaks."

64.     Despite accepting the benefits, Abrazo does not pay MacKinney and the Putative Class Members for the compensable work they perform during their automatically deducted "meal breaks."

65.     Thus, under Abrazo's uniform automatic meal break deduction policy, MacKinney and the Putative Class Members were, and are, denied overtime pay for those on-duty "meal breaks" during workweeks in which they worked more than 40 hours in violation of the FLSA.

66.     In addition to excluding time from these employees' wages for "meal breaks," Abrazo also uniformly subjects MacKinney and the Putative Class Members to its automatic rounding policy.

67.     Specifically, Abrazo automatically rounds MacKinney's and the Putative Class Members' recorded time punches to the nearest quarter hour in 7-minute increments for Abrazo's—not these employees'—primary benefit.

68.     In fact, in conjunction with Abrazo's automatic rounding policy, Abrazo also prohibits MacKinney and the Putative Class Members from clocking in and out for their shifts within more than 7 minutes of their scheduled shift start and end times.

69.     By enforcing these policies together, Abrazo ensures its automatic rounding policy *always* benefits Abrazo—and *never* benefits MacKinney and the Putative Class Members.

70.     Thus, under Abrazo's uniform automatic rounding policy, MacKinney and the Putative Class Members are denied overtime pay for all overtime hours worked during workweeks in which they work more than 40 hours in violation of the FLSA.

71.     MacKinney worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

72.     For example, during the workweeks ending on December 24 and December 31, 2022, MacKinney worked more than 60 hours each week.

73.     Likewise, each Putative Class Member worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

74.     Indeed, MacKinney and the Putative Class Members work 12.5-hour shifts for at least 3-4 days each workweek (or 37.5 to 50 hours).

75.     And MacKinney and the Putative Class Members regularly are also required to work "off the clock" during their unpaid meal breaks to complete their patient care job duties and responsibilities for Abrazo's predominate benefit.

76.     As a result, MacKinney and the Putative Class Members routinely work in excess of 40 hours in a typical workweek.

77.     When MacKinney and the Putative Class Members work more than 40 hours in a workweek, Abrazo does not pay them overtime wages for all overtime hours worked because Abrazo fails to include time these employees worked "off the clock" during their unpaid meal breaks in their total number of hours worked in a given workweek in willful violation of the FLSA.

**COLLECTIVE ACTION ALLEGATIONS**

78.    MacKinney incorporates all other paragraphs by reference.

79.    MacKinney brings his claims as a collective action on behalf of himself and the Putative Class Members.

80.    The Putative Class Members were uniformly victimized by Abrazo's automatic meal break deduction policy, which is in willful violation of the FLSA.

81.    Other Putative Class Members worked with MacKinney and indicated they were paid in the same manner, performed similar work, and were subject to Abrazo's same automatic meal break deduction policy.

82.    Based on his experience with Abrazo, MacKinney is aware Abrazo's illegal practices were imposed on the Putative Class Members.

83.    The Putative Class Members are similarly situated in all relevant respects.

84.    Even if their precise job duties or locations might vary, these differences do not matter for the purposes of determining their entitlement to overtime.

85.    Therefore, the specific job titles or precise locations of the various Putative Class Members do not prevent collective treatment.

86.    Rather, the putative collective is held together by Abrazo's uniform automatic meal break deduction policy, which systematically deprived MacKinney and the Putative Class Members of overtime wages for all hours worked after 40 in a workweek.

87.    Abrazo's failure to pay overtime wages as required by the FLSA results from generally applicable, systematic policies and practices which are not dependent on the personal circumstances of the Putative Class Members.

88.    Abrazo's records reflect the number of hours the Putative Class Members recorded they worked each week.

89.    Abrazo's records also show that it automatically deducted 30 minutes a day from the Putative Class Members' recorded work time for meal breaks.

90.    Likewise, Abrazo's records show the specific times the Putative Class Members punched in and out for their shifts.

91.    And Abrazo's records show that it automatically rounded the Putative Class Members' recorded time punches to the nearest quarter hour.

92.    The back wages owed to MacKinney and the Putative Class Members can therefore be calculated using the same formula applied to the same records.

93.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Abrazo's records, and there is no detraction from the common nucleus of liability facts.

94.    Therefore, the issue of damages does not preclude collective treatment.

95.    MacKinney's experiences are therefore typical of the experiences of the Putative Class Members.

96.    MacKinney has no interest contrary to, or in conflict with, the Putative Class Members.

97.    Like each Putative Class Member, MacKinney has an interest in obtaining the unpaid wages owed to them under federal law.

98.    A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

99. Absent this collective action, many Putative Class Members likely will not obtain redress for their injuries, and Abrazo will reap the unjust benefits of violating the FLSA.

100. Further, even if some of the Putative Class Members could afford individual litigation against Abrazo, it would be unduly burdensome to the judicial system.

101. Concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Putative Class Members' claims.

102. The questions of law and fact that are common to each member of the Putative Class predominate over any questions affecting solely the individual members.

103. Among the common questions of law and fact are:

    a. Whether Abrazo engaged in a policy and practice of automatic time deductions for meal periods that were not *bona fide*, continuous, and uninterrupted in violation of the FLSA;

    b. Whether Abrazo's automatic meal break deduction policy deprived MacKinney and the Putative Class Members of pay for time worked during meal periods that were not *bona fide*, continuous, and uninterrupted in violation of the FLSA;

    c. Whether Abrazo knew, or had reason to know, MacKinney and the Putative Class Members were requested, suffered, permitted, or allowed to work "off the clock" during their unpaid meal breaks in violation of the FLSA;

d.      Whether Abrazo failed to pay MacKinney and the Putative Class Members overtime wages for all hours worked after 40 in a workweek, including those worked "off the clock" during their unpaid meal breaks, in violation of the FLSA;

e.      Whether Abrazo's decision not to pay MacKinney and the Putative Class Members overtime wages for all overtime hours worked was made in good faith; and

f.      Whether Abrazo's FLSA violations were willful.

104.    MacKinney knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

105.    As part of its regular business practices, Abrazo intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to MacKinney and the Putative Class Members.

106.    Abrazo's illegal meal break deduction policy deprived MacKinney and the Putative Class Members of overtime wages for all hours worked after 40 in a workweek, which they are owed under federal law.

107.    There are many similarly situated Putative Class Members who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

108.    This notice should be sent to the Putative Class Members pursuant to 29 U.S.C. § 216(b).

109.    Those similarly situated employees are known to Abrazo, are readily identifiable, and can be located through Abrazo's business and personnel records.

### ABRAZO'S FLSA VIOLATIONS WERE WILLFUL AND/OR DONE IN RECKLESS DISREGARD OF THE FLSA

110.    MacKinney incorporates all other paragraphs by reference.

111.    Abrazo knew it was subject to the FLSA's overtime provisions.

112.    Abrazo knew the FLSA required it to pay non-exempt employees, including the Putative Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

113.    Abrazo knew the Putative Class Members were non-exempt employees entitled to overtime pay.

114.    Abrazo knew the Putative Class Members were paid on an hourly basis.

115.    Abrazo knew each Putative Class Member worked over 40 hours in at least one workweek during the three years before this Complaint was filed because Abrazo required these employees to record their hours worked using its timeclock system.

116.    Abrazo knew the FLSA required it to pay employees, including the Putative Class Members, for all hours they performed compensable work.

117.    Abrazo knew that, as the Putative Class Members' employer, it had a duty to ensure these employees were not performing work "off the clock" (without pay) that Abrazo did not want performed.

118.    Abrazo knew it failed to provide the Putative Class Members with *bona fide*, uninterrupted meal breaks.

119.    Abrazo knew the Putative Class Members did not actually receive *bona fide*, uninterrupted meal breaks.

120.    Abrazo knew the Putative Class Members regularly worked during their unpaid meal breaks.

121.    Abrazo knew it requested, suffered, permitted, or allowed the Putative Class Members to work during their unpaid meal breaks.

122.    Abrazo knew the Putative Class Members regularly spent their unpaid meal breaks substantially performing their regular patient care job duties for Abrazo's predominant benefit.

123.    Indeed, the Putative Class Members complained to Abrazo's management, HR, and/or their supervisors about being forced to work during their unpaid meal breaks.

124.    Thus, Abrazo knew, should have known, or recklessly disregarded the fact that the Putative Class Members performed compensable work during their unpaid meal breaks.

125.    Nonetheless, Abrazo automatically deducted 30 minutes a day from the Putative Class Members' recorded work time (and wages) for meal breaks.

126.    In other words, Abrazo knew, should have known, or recklessly disregarded the fact that it did not pay the Putative Class Members for all the hours they performed compensable work.

127.    Abrazo's decision to automatically deduct 30 minutes a day from the Putative Class Members' recorded work time for meal breaks was neither reasonable, nor was the decision to automatically deduct 30 minutes a day from the Putative Class Members' recorded work time for meal breaks made in good faith.

128.    Abrazo's failure to pay the Putative Class Members overtime wages for all overtime hours worked was neither reasonable, nor was the decision not to pay these employees overtime wages for all overtime hours worked made in good faith.

129.    Abrazo knew, should have known, or recklessly disregarded whether the conduct described in this Complaint violated the FLSA.

130.    Abrazo knowingly, willfully, and/or in reckless disregard carried out these illegal policies that deprived MacKinney and the Putative Class Members of overtime wages for all hours worked after 40 in a workweek in violation of the FLSA.

131.    Indeed, Abrazo and its affiliated entities (including its parent corporation, Tenet Healthcare Corporation) have been sued previously for failing to pay employees overtime wages in violation of the FLSA and analogous state wage and hour laws, including for Abrazo's same automatic deduction policy that is the subject of this collective action. *See, e.g.*, *Selmon v. Tenet Healthcare Corp. d/b/a Abrazo Health Care, et al.*, No. 2:15-CV-01549 (D. Ariz.).

### CAUSE OF ACTION

### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA

132.    MacKinney incorporates all other paragraphs by reference.

133.    MacKinney brings his FLSA claim on behalf of himself and the Putative Class Members pursuant to 29 U.S.C. § 216(b).

134.    Abrazo violated, and is violating, the FLSA by employing non-exempt employees (MacKinney and the Putative Class Members) in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not

less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek, including those worked during their unpaid meal breaks.

135.    Abrazo's unlawful conduct harmed MacKinney and the Putative Class Members by depriving them of the overtime wages they are owed.

136.    Accordingly, MacKinney and the Putative Class Members are entitled to recover their unpaid overtime wages under the FLSA in an amount equal to 1.5 times their regular rates of pay, plus an equal amount as liquidated damages, as well as attorney's fees and costs.

### JURY DEMAND

137.    MacKinney demands a trial by jury.

### RELIEF SOUGHT

WHEREFORE, MacKinney, individually and on behalf of the Putative Class Members, seeks the following relief:

  a.    An Order designating this lawsuit as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all Putative Class Members with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

  b.    An Order pursuant to Section 16(b) of the FLSA finding Abrazo liable for unpaid overtime wages due to MacKinney and the Putative Class Members, plus liquidated damages in amount equal to their unpaid overtime wages;

c.   Judgment awarding MacKinney and the Putative Class Members all unpaid wages, liquidated damages, and any other penalties available under the FLSA;

d.   An Order awarding attorney's fees, costs, and expenses;

e.   Pre- and post-judgment interest at the highest applicable rates; and

f.   Such other and further relief as may be necessary and appropriate.

1  Dated: September 29, 2023.                Respectfully submitted,

2                                            **RANDALL LAW PLLC**

3
                                            By: */s/ Samuel R. Randall*
4                                                   Samuel R. Randall (No. 024517)
                                            4742 North 24th Street, Suite 300
5                                            Phoenix, Arizona 85016
                                            Phone: 602-328-0262
6                                            Fax: 602-926-1479
                                            srandall@randallslaw.com
7

8                                            Michael A. Josephson*
9                                            Andrew W. Dunlap*
                                            **JOSEPHSON DUNLAP LLP**
10                                           11 Greenway Plaza, Suite 3050
                                            Houston, Texas 77046
11                                           Phone: 713-352-1100
                                            Fax: 713-352-3300
12                                           mjosephson@mybackwages.com
13                                           adunlap@mybackwages.com

14

15                                           Richard J. (Rex) Burch*
                                            **BRUCKNER BURCH PLLC**
16                                           11 Greenway Plaza, Suite 3025
                                            Houston, Texas 77046
17                                           Phone: 713-877-8788
                                            Fax: 713-877-8065
18                                           rburch@brucknerburch.com
19

20                                           William C. (Clif) Alexander*
                                            Austin W. Anderson*
21                                           **ANDERSON ALEXANDER PLLC**
22                                           101 N. Shoreline Blvd., Suite 610
                                            Corpus Christi, Texas 78401
23                                           Phone: 361-452-1279
                                            Fax: 361-452-1284
24                                           clif@a2xlaw.com
25                                           austin@a2xlaw.com

26                                           *Pro hac vice applications forthcoming

27
                                            **ATTORNEYS FOR MACKINNEY &**
28                                           **THE PUTATIVE CLASS MEMBERS**